### PEOPLE v. SUYDAM.

*(Supreme Court, General Term, First Department.* May 15, 1891.)

LARCENY—FALSE REPRESENTATIONS—EVIDENCE.

On an indictment for larceny it appeared that defendant represented that he was the owner of certain real estate, and offered to sell the same to one F. When the parties met to execute the contract defendant stated that he was not the owner of the property, but that it was owned by his aunt, and that he was her agent, with full power to make a contract to sell the property, whereupon F. entered into a contract of sale with defendant, and made the cash payment to him. It afterwards appeared that the owner had not authorized defendant to sell. *Held*, that the evidence was sufficient to sustain a verdict of guilty.

Appeal from court of general sessions, New York county.

Abraham Suydam was indicted for larceny as follows: "The said Abraham Suydam, late of the city of New York, in the county of New York aforesaid, on the 12th day of July, in the year of our Lord one thousand eight hundred and eighty-nine, at the city and county aforesaid, with force and arms, with intent to deprive and defraud Michael Fay and William Stacom of the proper moneys, goods, chattels, and personal property hereinafter mentioned, and of the use and benefit thereof, and to appropriate the same to his own use, did then and there feloniously, fraudulently, and falsely pretend and represent to the said Michael Fay and William Stacom, that he, the said Abraham Suydam, was then, and for the past twenty years had been, the agent of one Susan D. Brown, for the transaction of her business, and in the buying and selling of real property for her; and that he, the said Abraham Suydam, was then and there authorized and empowered by the said Susan D. Brown to sell for her, and as her agent, all those four certain lots of land, with the buildings thereon erected, situated on the westerly side of Cannon street, between Rivington and Stanton streets, in the said city, known as 'Numbers 79, 81, 83, and 85 Cannon Street,' belonging to the said Susan D. Brown, to the said Michael Fay and William Stacom, for and at the consideration of twenty-seven thousand dollars, and to then and there enter into, sign, and execute a written contract with the said Michael Fay and William Stacom, for and as the agent of the said Susan D. Brown, for the sale of the said lots and buildings for and at the consideration aforesaid, to be paid by the said Michael Fay and William Stacom as follows, to-wit: The sum of seven hundred and fifty dollars upon the execution of the said contract; twenty thousand dollars by the said Michael Fay and William Stacom executing and delivering to him, the said Abraham Suydam, their bond and purchase-money mortgage on the said premises for that sum, payable six months from date of delivery of deed, as hereinafter alleged, on or before at their option, upon thirty days' notice, with interest at five per cent.; and the balance of six thousand two hundred and fifty dollars in cash, upon the delivery of the said deed; and for the executing, acknowledging, and delivering to the said Michael Fay and William Stacom a proper deed for the conveying and assuring to them the fee-simple of the said premises, free from all incumbrances; and the said Michael Fay and William Stacom, then and there believing the said false and fraudulent pretenses and representations so made as aforesaid by the said Abraham Suydam, and being deceived thereby, were induced; by reason of the false and fraudulent pretenses and representations so made as

aforesaid, to and did then and there enter into, sign, and execute with the said Abraham Suydam a written contract for the sale by him and purchase by them of the lots and buildings aforesaid at and for the said consideration, and upon the terms and conditions aforesaid, and to and did then and there, upon the execution of the said contract, give and deliver to the said Abraham Suydam the sum of seven hundred and fifty dollars, lawful money of the United States of America, and of the value of seven hundred and fifty dollars, and one written instrument and evidence of debt, to-wit, an order for the payment of money of the kind called ' bank cheques,' for the payment of, and of the value of, seven hundred and fifty dollars of the proper moneys, goods, chattels, and personal property of the said Michael Fay and William Stacom. And the said Abraham Suydam did then and there feloniously receive and obtain the said proper moneys, goods, chattels, and personal property from the possession of the said Michael Fay and William Stacom, by color and by aid of the false and fraudulent pretenses and representations aforesaid, with intent to deprive and defraud the said Michael Fay and William Stacom of the same, and of the use and benefit thereof, and to appropriate the same to his own use.    Whereas, in truth and fact the said Abraham Suydam was not then, and had not been for the past twenty years, and never was, the agent of the said Susan D. Brown for the transaction of her business, or in the buying or selling of real property for her, and he, the said Abraham Suydam, was not then and there authorized or empowered by the said Susan D. Brown to sell for her, or as her agent, or in any manner, the said lots and buildings to the said Michael Fay and William Stacom, or to any other person or persons, or to then and there enter into, sign, or execute any contract with them or any other person or persons for the sale of the said lots and buildings for or at the said consideration, or upon any terms or in any manner, or for the executing, acknowledging, or delivering to them, the said Michael Fay and William Stacom, or to any other person or persons, any proper deed for the conveying and assuring to them the fee-simple, or any right, title, or interest whatsoever, of or in the said premises.    And whereas, in truth and in fact, the pretenses and representations so made as aforesaid by the said Abraham Suydam to the said Michael Fay and William Stacom was and were then and there in all respects utterly false and untrue, as he, the said Abraham Suydam, at the time of making the same then and there well knew.    And so the grand jury aforesaid do say that the said Abraham Suydam, in the manner and form aforesaid, by the means aforesaid, the said proper moneys, goods, chattels, and personal property of the said Michael Fay and William Stacom then and there feloniously did steal, against the form of the statute in such case made and provided, and against the peace and dignity of the said people."    It appeared that Mrs. Brown had not authorized defendant to sell the property.    Defendant was found guilty, and appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Levy, Friend & House,* (*Frederick B. House,* of counsel,) for appellant. *John R. Fellows,* Dist. Atty., (*McKenzie Semple,* of counsel,) for the People.

BARRETT, J.    We think it entirely clear that Fay and Stacom were cheated out of their money by the defendant's false pretense that he had full power and authority from his aunt (who was the Susan D. Brown named in the indictment) to sell the property in question.    It may be true that Suydam could have accomplished his purpose without resorting to this false pretense. Fay and Stacom believed, down to the time when the contract was being prepared, that Suydam was himself the owner of the property; and if he had suffered them to remain in that error he might have obtained their money without any active misrepresentation.    But he preferred to cheat them in another way, and so at the last moment he disabused their minds of the idea that he was the owner of the property, and informed them that the real owner was

his aunt, in Philadelphia. Had the matter rested there, it is inconceivable that the transaction should have gone through. Fay and Stacom may have been willing to part with their money upon the delusion that Suydam owned the property, and could lawfully contract for its sale, but as sane business men they would not have been willing, upon being awakened to the truth, to part with their money to one who confessedly was not the owner of the property, and consequently had no right to sell. Suydam's disclosure of the true ownership at once changed the entire situation, and necessarily closed their purse. To reopen it the misrepresentation which followed became absolutely essential. Having said, "My aunt owns the property," Suydam was compelled—unless his scheme were to miscarry—to add, "but that need not prevent the consummation of our bargain, for I have full power to sell;" and upon this latter assurance Fay and Stacom again were ready to close the transaction. They must have relied upon such assurance, unless they were willing to throw their money away, and to do so advisedly. It is no answer to say that up to that very moment they relied upon Suydam's ownership, or upon his integrity. Integrity did not confer title, and reliance upon ownership disappeared with the disappearance of the fact. Belief in Suydam's integrity, indeed, remained as a factor, but only so far as to induce reliance upon the false pretense which followed. It will hardly be claimed that after Fay and Stacom learned that Suydam was not the owner they would still have contracted with him, and paid him the money, had he told them the whole truth, namely, that he had no authority from his aunt to sell. Nor would they have closed the transaction even if he remained silent upon the latter head. Silence would have necessitated further inquiry. The statement as to the true ownership, therefore, called for some further assurance as to the defendant's right to proceed, and that assurance was forthcoming. It was that assurance, and that only, which, at the time and under the circumstances it was given, induced Fay and Stacom to sign the contract, and to part with their money. But it certainly was competent for the jury to take that view of the testimony, and I am unable to perceive any logical basis for the proposition that non-reliance upon the false pretense so conclusively appears that it was error even to submit the question of reliance to the jury. The fact that the contract was not altered to meet the defendant's disclosure of the real ownership, and his declared agency in the matter, is immaterial except upon the question of fact as to whether in the end Fay and Stacom dealt with the defendant in his own right or as the agent of Mrs. Brown; and upon that question it was fully submitted to, and doubtless considered by, the jury. The defendant's crime does not depend upon the technical sufficiency of the contract to bind the person falsely represented to be his principal. The intent was not, as the jury have found, to contract with Suydam personally, but as the agent of Mrs. Brown. Such intent naturally followed the disclosure of the agency, and the verdict is fully supported by the probabilities of the case. Relying, then, upon the false pretense of authority, Fay and Stacom had a right also to rely upon Mrs. Brown's performance of the contract, however imperfect its form. It was the false pretense, made with the intent to cheat, and relied upon, which moved Fay and Stacom to sign the contract in the form in which it was, and thereupon to part with their money to the defendant. There is nothing in any of the other points presented by the defendant. I think his conviction was just and should be affirmed. All concur.